J-S41045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CYNTHIA FODOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LOUISE BARNUM AND MICKEL BARNUM | : | |
| | : | No. 1488 EDA 2025 |
| APPEAL OF: LOUISE BARNUM | : | |

Appeal from the Order Entered May 12, 2025
In the Court of Common Pleas of Monroe County Civil Division at No(s):
006746-CV-2017

BEFORE:   BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED FEBRUARY 17, 2026**

Louise Barnum (Mother) appeals *pro se* from the May 12, 2025 order, entered in the Court of Common Pleas of Monroe County, finding her to be in willful civil contempt of the order entered February 16, 2024, for her failure to pay her portion of the fees owed to the guardian *ad litem* (GAL) for representation of Mother's and Mickel Barnum's (Father)[1] three minor children in various custody proceedings.  Mother raises various challenges to the court's order for her to pay $100 per month to purge herself of the 30-day sanction of incarceration.  After review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Neither Father nor Cynthia Fodor have filed briefs in this case.

The trial court set forth the facts and procedural history of this case as follows:

On September 7, 2017, Plaintiff, Cynthia Fodor (Maternal Grandmother), initiated this case by filing a custody complaint against Mother and [Father] regarding [the parents'] three children[. . . .] Subsequently, over the past seven years, [the court] adjudicated numerous modification requests and contempt matters.

On February 21, 2023, [the court] appointed a [GAL] for the minor children, pursuant to [Pennsylvania Rule of Civil Procedure] 1915.11.2, and ordered:

The fees for the [GAL] shall be paid as follows: Each party shall pay 50% of the [GAL]'s fees and shall, within 10 days of the date of this order, deposit $750 with the [GAL] to be held in an IOLTA[2] account and applied to the [GAL]'s fees.

[Order, 2/21/23.]

On March 16, 2023, [the court] entered two separate orders denying both Mother's and Father's motions for reconsideration. On June 27, 2023, [the court] approved the GAL's petition for payment of counsel fees. On July 17, 2023, [the court] ordered the parties post an additional GAL retainer of $500 within 30 days.

On February 16, 2024, [the court] approved the GAL petition for payment of counsel fees filed February 15, 2024, directing that $1,000 of the fees be paid from the IOLTA retainer held by the GAL, and further ordered:

The remaining balance due of $1,807.00 shall be paid within 30 days by the parties[, with] $1,403.50 to be paid by [Mother] and $ 463.50 to be paid by [Father]. In addition[,] the parties each are ordered to post an additional [$]1,000.00 [] in retainer monies with [the GAL] within the next 30 days of the date of this order.

---

[2] **See** Pennsylvania Rule of Professional Conduct 1.15(a)(5). The acronym "IOLTA" stands for the phrase "interest on lawyers' trust accounts."

[Order, 2/16/24, at 2.]

[The court] entered a [r]ule on April 29, 2024 as to why Mother and Father should not be held in contempt for failure to comply with [the] February 16, 2024 order, and set a hearing for May 21, 2024, which was continued to August 27, 2024. On August 27, 2024, [the court] dismissed the contempt against Father for having paid his part of the ordered retainer, and upon request of Mother, continued the hearing with respect to Mother to April 4, 2025[,] as Mother represented to the court that she would be able to pay the GAL fees by that time. [The court] subsequently rescheduled the hearing to May 12, 2025, regarding Mother's failure to comply.

After hearing on May 12, 2025, [the court] determined that Mother was in willful contempt and had the ability to pay despite her failure to do so. [The court] sanctioned Mother to a period of 30 days['] incarceration in the Monroe County Correctional Facility and ordered that she could purge herself of contempt by paying the sum of $100 per month commencing on June 1, 2025, until the GAL was paid in full. Mother has never been incarcerated on the contempt finding and remains at liberty.

On June 10, 2025, Mother filed a [timely] notice of appeal to the Superior Court. Mother failed to comply with the Pennsylvania Rules of Appellate Procedure as she did not contemporaneously file and serve the [trial court] with a concise statement of errors complained of on appeal, along with the notice of appeal, in accordance with [Pennsylvania Rules of Appellate Procedure] 905(a)(2) and 906(a)(2).

On June 20, 2025, [the court] directed Mother to file a concise statement of errors complained of on appeal pursuant to [Pennsylvania Rule of Appellate Procedure] 1925(b) within twenty-one days. On June 30, 2025, Mother filed [her statement,] alleging the following [eight] errors:

1. The petition for special relief was ignored.

2. [Mother] lacked ability to pay.

3. Substantial child-support arrearages owed warranted equitable offset.

4. Lack of consideration of [Mother]'s use of limited funds for licensure to secure future income.

5. No separate hearing to determine ability to pay.

6. No findings on willfulness under 23 Pa.C.S. § 5323(g).

7. Fundamental due-process safeguards were omitted.

8. The [GAL] engaged in professional misconduct.

[Mother's Pa.R.A.P. 1925(b) Concise Statement, 6/30/25, at 1-2.] Trial Court Opinion, 7/10/25, at 1-4 (unnecessary capitalization, quotation marks, and footnotes omitted).

On appeal, Mother purports to raise essentially the same issues as those raised in her Rule 1925(b) statement.[3] Prior to reaching the merits of Mother's appeal, we observe that Mother's seventh and eighth claims are waived due to their vague phrasing, as presented in Mother's Rule 1925(b) statement. *See In re L.M.*, 923 A.2d 505, 509-10 (Pa. Super. 2007) (applying Rule 1925 waiver standards in family law context); *see also Kanter v. Epstein*, 866 A.2d 394, 400 (Pa. Super. 2004) (noting that Rule 1925 statement too vague for trial court to identify issues raised on appeal is equivalent to no statement

_____

[3] First, as the argument portion of Mother's brief mixes the issues and does not clearly delineate which argument pertains to which claims, we refer to the claims by how they are numbered in her Rule 1925(b) statement. *See* Mother's Brief, at 37 (Section D only purporting to address issues 2 and 3 yet also addressing issue 4); *see id.* at 39 (Section E only purporting to address issue 4 yet also addressing issue 6). Second, Mother's brief violates Pennsylvania Rule of Appellate Procedure 2119(a) insofar as it fails to clearly dedicate separate portions of the argument section to each issue presented. *See* Mother's Brief, at 37 (Section D purporting to address both issues 2 and 3 simultaneously); *see also id.* at 34, 37-38 (Sections B, D, E all purporting to address issue 2); *id.* at 40 (Section G purporting to address issue 5 but arguing issue 7); *id.* at 42 (Section H purporting to address issue 6 but arguing issue 8); *see also* Pa.R.A.P. 2119(a).

filed at all, and even if trial court correctly guesses issues raised on appeal and writes opinion pursuant to that supposition, issues remain waived); Pa.R.A.P. 1925(b)(4)(ii) ("[Rule 1925(b) s]tatement shall concisely identify each error that the appellant intends to assert **with sufficient detail to identify the issue to be raised for the judge**") (emphasis added).

Further, we observe that Mother may not raise issues for the first time in her Rule 1925(b) statement, and therefore, her first, third, and fifth issues are waived on that basis. *See Morgan v. Morgan*, 117 A.3d 757, 762 (Pa. Super. 2015) ("[A]ppellants may not raise issues for the first time in a Rule 1925(b) statement.") (citation omitted).

As to the merits of Mother's remaining challenges to the court's contempt order, our standard of review is as follows:

> When considering an appeal from an order holding a party in contempt for failure to comply with a court order, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion. The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason. To be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence.

*Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa. Super. 2009) (citations and unnecessary capitalization omitted).

To be found in civil contempt, a party must have violated a court order. *See Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001).

> To sustain a finding of civil contempt, the complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which [s]he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was

volitional; and (3) the contemnor acted with wrongful intent. Nevertheless, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.

If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven. The contemnor has the burden to prove the affirmative defense that [s]he lacks the ability to comply. The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party.

***Thomas***, 194 A.3d at 226 (citations and quotation marks omitted).

Upon a showing of a violation by a preponderance of the evidence, the alleged contemnor may then present rebuttal evidence of a present inability to comply. ***See Childress v. Bogosian***, 12 A.3d 448, 465 (Pa. Super. 2011). Once that rebuttal evidence is presented, "the court, in imposing coercive imprisonment for civil contempt, should set conditions for purging the contempt and effecting release from imprisonment with which it is convinced beyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." ***Id.*** (citations omitted).

Mother's remaining preserved arguments are her second, fourth, and sixth issues raised in her Rule 1925(b) statement, as restated above. In her second issue, which we note spans several sections of her argument, ***see supra*** at n.3, Mother specifically asserts that civil contempt may only be imposed when the record supports finding the contemnor presently had the ability to comply and the court places specific findings regarding that contempt as tied to the evidence in the record. ***See*** Mother's Brief, at 35 (citing ***Barrett v. Barrett***, 368 A.2d 616 (Pa. 1977)). Mother complains that there was no

- 6 -

finding of her ability to pay $100 per month to the GAL, as ordered by the court. *See* Mother's Brief, at 35. Mother relies on the record she developed at the hearing that allegedly establishes her limited means and sustained diligence in raising funds, including submission of 85 job applications, gig work as a ride-share driver that was made impossible by a September 2024 car accident, social security application denials, disability payment application denials, and her formation of a notary business in March 2025 to supplement her income. *See id.* (citing Contempt Hearing Exhibit 1). Also, Mother relies on our decision in ***Godfrey v. Godfrey***, 894 A.2d 776 (Pa. Super. 2006), for the proposition that, without a focused ability-to-pay inquiry, the trial court could not order confinement. *See* Mother's Brief, at 38-39. After our review, we conclude Mother is not entitled to relief.

The trial court explained its finding of contempt at the conclusion of the May 2025 hearing, as follows:

> Miss Barnum, I would believe that you might not have been able to pay all of it. But to not pay anything is something that I can't tolerate because I do think, particularly since you did receive a lot of the arrearage and then you took it upon yourself to have some discretionary spending[. . . .] So[,] I want you to start making payments[. . . towards the [GAL]. You're released from the doctor's care, you're capable of working at least in a part[-]time basis. [. . .] I believe you owe $1,602.50 as of February 16, 2024. Then there were additional fees incurred. [. . .] And now, this 12th day of May 2025, after hearing on the court's rule to show cause issued upon [Mother] to show cause why she should not be held in contempt for failure to pay the [GAL] fees, the court finds [Mother] in willful contempt of this court's order and specifically finds that she had the ability to pay despite her failure to do so.

N.T. Contempt Hearing, 5/12/25, at 14-16.

In addition to its contempt finding, the court expressly found that Mother was not credible in testifying that she did not have any ability to pay. *See* Trial Court Opinion, 7/10/25, at 5. Further, the court explained in greater detail its decision to find Mother in willful contempt in its Rule 1925(a) opinion:

> At the May 12, 2025, hearing, [the court] found that Mother had the ability to pay the GAL fees—in full or in part, particularly since she received sizable support arrearages in the [f]all and a tax refund but made no payments toward the GAL fees. Additionally, Mother chose to make other discretionary expenditures such [as for] her alleged notary business, for example, which have not produced meaningful income[,] all while ignoring her obligation to pay her portion of the GAL fees. Further, [the court] found that Mother can work but is not earnest in her efforts to find reasonable employment. We did not, and do not, believe Mother's testimony that she had made numerous job applications between November and May, especially since Mother presented no information as to the names of the employers to which she submitted employment applications or documentary evidence such as copies of job applications to support her assertions. For all those reasons, we found that Mother had the ability to pay a portion of the GAL fees, at a minimum, but willfully chose not to do so. Accordingly, we found Mother in willful contempt of our order and sanctioned her to incarceration with the purge condition that Mother make monthly payments towards her portion of the GAL fees.

*Id.*

After our review, we find that the court's conclusions are supported by the record and we discern no abuse of discretion or error of law. First, the court concluded that Mother was not credible, which we may not second guess if supported by the record. *See McMahon v. McMahon*, 706 A.2d 350, 354 (Pa. Super. 1998) ("the credibility of the witnesses and of the testimony is to be determined and weighed by the factfinder"). Indeed, the job applications

that Mother relies upon are not in the certified record and therefore may not be considered. *See Rosselli v. Rosselli*, 750 A.2d 355, 359 (Pa. Super. 2000) (stating that "This Court may review and consider only items which have been duly certified in the record on appeal. [. . . A] document not filed of record does not become part of the certified record by merely making a reproduction and placing that reproduction in the reproduced record. For purposes of appellate review, what is not of record does not exist.") (citations omitted). Accordingly, the court's credibility finding based on Mother's failure to diligently seek employment is supported in the record where there are no job applications and where she was otherwise employable. Effectively, therefore, based on the court's credibility finding, Mother failed to establish a defense of a present inability to comply. *See Childress*, 12 A.3d at 465.

Second, the court found that Mother received certain lump sums of money including a tax return and payments of arrearages, which receipts are supported by the record, *see* N.T. Contempt Hearing, 5/12/25, at 7 (Mother acknowledging $800 received as tax return); *see id.* at 12 (Father testifying he paid Mother child support in the amounts of $2500 and $3500 in November and December of 2024), yet Mother made no payment at all on the sum owed to the GAL, as ordered by the court. *See* Order, 2/16/24. We discern no evidence of record why Mother could not use these funds where Mother's testimony was deemed incredible and there is otherwise no record evidence of her debts and expenses.

- 9 -

Third, Mother concedes that her vehicular accident occurred in September 2024, which allegedly now prevents her from earning income, yet she fails to explain why she made no payments prior to the accident, when sums were already owed and ordered to be paid to the GAL and when Mother was ostensibly working as a driver. *See* Mother's Brief, at 22. Contrary to Mother's claims, the court specifically found that Mother had an ability to pay based on her employability, at least part-time, and based on the lump sums of cash she received. *See* Trial Court Opinion, 7/10/25, at 5. Accordingly, the record reflects, by a preponderance of the evidence, that Mother willfully failed to abide by the court's February 2024 order, and further, that $100 is payable by Mother on a monthly basis beyond a reasonable doubt. *See* ***Harcar***, 982 A.2d 1230, 1234; *see also* ***Childress***, 12 A.3d at 465. Therefore, we conclude that no relief is due on Mother's second issue.

In her fourth issue, Mother argues that the court improperly failed to consider that she used her limited funds to secure a notary license to commence a notary business, which reduced her cash on-hand in the short-term but could provide medium-term financial security. *See* Mother's Brief, at 37. Mother argues that "failing to weigh material, documented expenses that build earning capacity is the very definition of an abuse of discretion in this context." ***Id.*** at 38. We find no relief is due.

Although she cites to our standard of review, Mother fails to present any authority that required the court to expressly discuss how every single fact weighed within every factor in its contempt analysis. *See* Pa.R.A.P. 2119(a)

("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, **followed by such discussion and citation of authorities as are deemed pertinent**.") (emphasis added). In any event, contrary to Mother's claims, the trial court acknowledged Mother's notary business investment, but found it was a discretionary purchase, and in the greater scheme, that Mother failed to make any payment at all to the GAL. *See* Trial Court Opinion, 7/10/25, at 5 ("Additionally, Mother chose to make other discretionary expenditures such [as for] her alleged notary business, for example, which have not produced meaningful income[,] all while ignoring her obligation to pay her portion of the GAL fees."). We discern no abuse of discretion in that determination under the circumstances where Mother could have made some contribution toward the amount she owed to the GAL between February 16, 2024, and May 12, 2025. The court is not required to weigh the evidence as Mother would prefer. *See Harcar*, 982 A.2d 1234 (this Court reviews trial court determinations for abuse of discretion); *see also B.S.G. v. D.M.C.*, 255 A.3d 528, 535 (Pa. Super. 2021) (stating, "[I]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.") (citation and quotation marks omitted). Indeed, contrary to Mother's claims or desired outcome, there is no evidence of record that the notary business would be more successful than what it has shown itself to be, which is that it only provides Mother with enough funds to pay for gas. *See* N.T.

Contempt Hearing, 5/12/25, at 7 (Mother testifying "I earn maybe $20 here and there because [the notary business is] brand new. [. . .] I use that money for gas."). Accordingly, no relief is due on her fourth issue.

In her sixth issue, Mother complains that the court did not explain what portion of the order she violated, how Mother's conduct constituted intentional defiance of a definitive directive, and that the court failed to connect its willfulness conclusion to the record evidence, in alleged violation of 23 Pa.C.S. § 5323(g). **See** Mother's Brief, at 39. Again, we find no relief is due.

First, contrary to Mother's claims, the court's April 2024 rule to show cause notified Mother of the potential basis for contempt, and the court clearly explained that Mother specifically violated that portion of the February 2024 order that required her to pay her part of the GAL's fees. **See** Rule to Show Cause, 4/29/24 ("A rule is hereby issued upon Mother [. . .] to show cause why [she] should not be held in contempt for failure to comply with this [c]ourt's order of February 16, 2024[,] directing the payment of the [GAL] fees."); **see also** Order, 2/16/24, at 2 ("The remaining balance due of $1,807.00 shall be paid within 30 days by the parties[, with] $1,403.50 to be paid by [Mother] and $463.50 to be paid by [Father]. In addition[,] the parties each are ordered to post an additional [$]1,000.00 [] in retainer monies with [the GAL] within the next 30 days of the date of this order."). Second, despite Mother's claims to the contrary, the court specifically based its finding of willfulness on a combination of Mother's ability to seek work, failure to do so, and failure to make any payment at all to the GAL, despite her receipt of

certain lump sums at various times while she owed fees to the GAL. ***See*** Trial Court Opinion, 7/10/25, at 5 ("For all those reasons, we found that Mother had the ability to pay a portion of the GAL fees, at a minimum, but willfully chose not to do so. Accordingly, we found Mother in willful contempt of our order and sanctioned her to incarceration with the purge condition."). Therefore, Mother's claims on this issue are both belied by the record and by the specific decisions of the trial court. Accordingly, Mother is due no relief on any of her claims.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/17/2026