J-A19018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EUGENE J. KUBAN, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| DIEDRE L. KUBAN, | | |
| Appellee | | No. 1325 WDA 2013 |

Appeal from the Decree Entered July 13, 2013
In the Court of Common Pleas of Washington County
Civil Division at No(s): 2011-40

BEFORE:  BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED OCTOBER 30, 2014**

Appellant, Eugene J. Kuban (Husband), appeals from the divorce decree entered on July 13, 2013.  On appeal, Husband challenges certain aspects of an equitable distribution award entered on July 8, 2013.  We affirm in part, vacate in part and remand for further proceedings.[1]

Husband and Diedre L. Kuban (Wife) were married on August 8, 1994. Husband was born in February 1937 and Wife was born in September 1947. The parties' final separation date is July 8, 2011.  No children were born of the marriage and both parties have adult children from previous marriages.

---

[1] On June 12, 2014, counsel for Husband filed a motion for leave to file erratum to reply brief.  We grant the motion.

* Former Justice specially assigned to the Superior Court.

The parties entered into a prenuptial agreement on August 4, 1994. The agreement provided, among other things, that any marital property, including increases in value of premarital property, would be divided equally. In addition, either party could make a gift to the marital estate or to the other spouse by placing money in joint names or the name of the other spouse. Spousal support, separate maintenance, alimony *pendent lite* (APL), counsel fees, and alimony were waived.

Husband filed a complaint in divorce on January 5, 2011, which included a claim for equitable distribution. Thereafter, Wife filed a petition, which also alleged a claim for equitable distribution. Both parties filed affidavits of consent and waivers of notice. Wife subsequently filed an amended petition that requested APL, alimony, and counsel fees in addition to equitable distribution. Wife challenged the validity of the parties' prenuptial agreement.

After a hearing, the trial court determined that the parties entered a valid prenuptial agreement. Accordingly, the court dismissed all economic claims, except for matters relating to equitable distribution of the marital estate.

The case was referred to a standing master who heard the parties' equitable distribution claims on February 20, 2013. The master calculated the total value of the parties' marital estate as $344,347.00 and recommended the following distributional scheme.

To Wife:

| | |
|---|---|
| Increase in value of 711 Valley View Road | 68,150 |
| MorganStanley/Sharebuilder IRA | 51,746 |
| ShareBuilder account | 14,542 |
| Advance from Topseed Kennel account | 3,700 |
| Less decrease in value of interest in Williamsport Road property | -4,833 |
| Less PNC Credit account | -6,920 |
| Total: | $126,385 |
| Cash from Husband | $45,789 |
| Total Distribution to Wife: | $172,174 |

To Husband:

| | |
|---|---|
| Increase in value of Hamtom Road property | 22,900 |
| MorganStanley [IRA][] account | 130,004 |
| Ameriprise Financial Services account | 4,609 |
| MorganStanley account | 29,756 |
| ING life insurance | 18,447 |
| ShareBuilder IRA | 9,492 |
| Joint personal property | 5,000 |
| Less Home Depot credit account | -2,246 |
| Total: | $217,962 |
| Less cash payment to Wife | $45,789 |
| Net distribution to Husband: | $172,173 |

Master's Report and Recommendation, 4/3/13, at 15-16.

Both parties filed exceptions with the trial court. The court denied Husband's exceptions and sustained one of Wife's exceptions. Specifically, the court held that the increase in value of Husband's Hamtom Road property was $122,900.00, not $22,900.00 as the master determined.

Because of this adjustment, the court added $50,000.00 to the amount Husband was obligated to pay to Wife. In addition to the cash payment, the equitable distribution order entered on July 8, 2013 directed that Husband should transfer to Wife a joint Morgan Stanley account valued at $29,755.79 and that Wife should receive $20,244.21 from Husband's Morgan Stanley IRA. This appeal timely followed entry of the parties' divorce decree on July 13, 2013.[2]

Husband's brief raises the following questions for our review:

Should Wife's misappropriation from the joint checking account have been treated as an advancement against equitable distribution?

Was Husband entitled to credit for his payoff of the mortgage balance on Wife's premarital residence?

Was there an increase of $122,900[.00] in the combined value of the real estate on which Husband's residence is situated and the boarding kennel business at the same location?

Did the premarital portion of Husband's IRA become joint and thereby marital?

Husband's Brief at 4.[3]

Husband's claims on appeal challenge certain aspects of an equitable distribution award entered by the trial court. Our review of such claims is guided by the following well established principles.

---

[2] Both Husband and the trial court have complied with the requirements of Pa.R.A.P. 1925.

[3] We have re-ordered Husband's claims to facilitate our discussion.

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Childress v. Bogosian*, 12 A.3d 448, 455-456 (Pa. Super. 2011) (internal citations and quotations omitted).

Husband's first claim asserts that the trial court erred in refusing to treat Wife's alleged misappropriation of $34,821.73 from marital funds as an advance to Wife against her equitable share of the marital estate. During the marriage, the parties maintained a joint checking account. Husband claims that from September 1999 through August 2009, Wife made false register entries with respect to 259 checks. Husband maintains that these checks were drawn for amounts larger than those reflected in the

corresponding register entries. Specifically, Husband claims that the actual amounts withdrawn totaled $57,575.28 while the amounts entered in the check resister totaled $22,753.55, for a difference of $34, 821.73. Husband also claims that the check register did not accurately reflect payees.

The trial court refused to disturb the master's finding that the record did not support Husband's claim that Wife used the joint checking account to misappropriate nearly $35,000.00, noting that the record supported the master's findings and credibility determinations. We concur in the trial court's assessment. The master summarized the relevant testimony as follows: 1) Husband wrote checks on the parties' account, logged those checks in the ledger, and enjoyed access to the parties' bank statement at all relevant times; 2) Husband was content to have Wife manage the joint checking account; 3) Husband never questioned Wife's expenditures for her children or otherwise as represented by the 259 checks throughout the ten-year period that Wife managed the account; 4) funds from the parties' joint checking account were used to pay Wife's daughter for work performed at a kennel business Husband operated from his residence; and 5) Wife made substantial deposits to the joint account throughout the parties' marriage. *See* Master's Report and Recommendation, 4/3/13, at 11-12 ¶ 33. Since the master's determinations find support in the record, we discern no abuse of discretion in the trial court's refusal to alter the master's findings.

Husband next claims that the trial court erred in failing to give him credit for paying off the balance on Wife's premarital mortgage. At the time of the parties' marriage, Wife owned real estate located on Valley View Road in Eighty-Four, Pennsylvania. That property was subject to a mortgage in Wife's name and served as Wife's primary residence before she moved into Husband's home. In January 2003, the parties decided to satisfy the mortgage so that Wife's property would generate a positive rental income. To carry out this plan, Husband and Wife paid $47,906.14 from their joint checking account on January 8, 2003 to retire Wife's mortgage obligation.

Husband admits that the check used to pay off Wife's mortgage was drawn on the parties' joint checking account. *See* Appellant's Brief at 26. Nevertheless, Husband points out that the funds came from a $73,518.26 deposit he made nine days before the parties tendered their satisfaction payment. Husband inherited these funds from his mother. Husband argues that he is entitled to credit for the $47,906.14 payment (which increased Wife's equity in the property by that amount) because the source funds were originally non-marital and passed only briefly through the parties' joint account.

The master rejected Husband's contention, concluding that he was not entitled to credit for satisfying Wife's obligation since the funds used to pay the mortgage came from a joint account. *See* Master's Report and Recommendation, 4/3/13, at 7-8 ¶ 22. The trial court declined to disturb

this ruling. *See* Trial Court Opinion, 7/8/13, at 1-2. Paragraph 6.03 of the parties' prenuptial agreement plainly provides that transfers of non-marital property to jointly held accounts constitute gifts to the marital estate. Pursuant to the plain language of the parties' agreement, Husband is not entitled to relief on his second claim.

Husband's next claim focuses upon the appreciated value assigned to his residence and the boarding kennel business he operated at that location. Specifically, Husband claims that the trial court erred in concluding that there had been an increase of $122,900.00 in the combined value of Husband's residential property and his boarding kennel business. Husband alleges that the estimated values for his residence and the kennel business that appear in the parties' prenuptial agreement represented merely a rough apportionment of value between the realty and the business. It is Husband's position that since the current value of the kennel business is far less than the estimate stated in the prenuptial agreement, the reduced value of the business should offset any increase in the value of Husband's residential property.

The relevant background of this claim is as follows. Husband resides on a 5.29 acre tract on Hamtom Road in Eighty-Four, Pennsylvania. He acquired the property prior to the parties' marriage. In addition, before the parties were married, Husband started a boarding kennel business, known

as Topseed Kennels, at the Hamtom Road property. Husband operated Topseed Kennels as a sole proprietorship and continues to do so today.

Through counsel, the parties reached certain stipulations regarding the value of Husband's residential property. The parties agreed that the residence had a value of $140,000.00 at the time of the marriage, which value is also reflected in the parties' prenuptial agreement. Although the parties disputed the increase in the value of the property during the course of the marriage, they agreed that the current value of the property is $262,000.00, which represented the average of Husband's and Wife's property appraisals.

The prenuptial agreement valued Topseed Kennels as a separate business asset worth $100,000.00. The agreement further provided that Husband would buy a term life insurance policy equal to the value of the residence and Topseed Kennels with Wife as the named beneficiary. Wife promised under the prenuptial agreement to pay the proceeds of the policy to Husband's estate for the purchase of the residence and Topseed Kennels. Neither party offered a current value for Topseed Kennels during testimony before the master.

In view of the foregoing circumstances, the master fixed the value of Husband's residential property at $240,000.00 at the time of marriage. Consequently, the master calculated the appreciated value of the property to be $22,900.00 during the course of the marriage. Pursuant to the

prenuptial agreement, the master deemed this sum to be marital property that was subject to equitable distribution.

The trial court granted Wife's exception to the master's determination, finding that the master erred in establishing the increase in value of Husband's residence. Citing the parties' prenuptial agreement and their stipulation, the court found that the premarital value of Husband's residence was $140,000.00 and the current value totaled $262,900.00. Because of this, the court determined that the increase in the value of Husband's residence equaled $122,900.00 and not $22,900.00, as the master found. The court reasoned that the parties' prenuptial agreement (the source of the premarital valuation of Husband's residence) treated the kennel as a separate asset classified as a "business," not "real estate." Moreover, the parties' stipulation (the basis for the current valuation of Husband's property) was based upon an average of Husband's and Wife's real estate appraisals, which did not include an assessment of Topseed Kennels' value. Neither party offered testimony or evidence about the value of Topseed Kennels and, based upon the gross receipts of the kennel, the court found the value of the business unchanged during the relevant period. For each of these reasons, the court concluded that the value of Husband's realty was independent of the value of the kennel business. We concur in the trial court's determination, which finds support in the record. Hence, Husband is not entitled to relief on his third claim.

Husband's fourth claim alleges that the trial court improperly failed to correct the master's error in concluding that the premarital portion of Husband's Morgan Stanley Individual Retirement Account (IRA) should be treated as marital property because it was included in a joint account. Prior to the marriage, Husband maintained an IRA account with Dean Witter Reynolds valued at $46,060.00 as of August 31, 1994. This account was subsequently transferred, "together with funds from other joint accounts," to Morgan Stanley Smith Barney (MSSB). As of December 31, 2010, Husband's IRA account at MSSB had a value of $130,004.00. The master determined that these funds were held in a joint account in the names of Husband and Wife. Accordingly, the master concluded that Husband's IRA had a value of $130,004.00 for purposes of equitable distribution.

Husband filed exceptions to the master's ruling which the trial court denied. The trial court reasoned that Husband failed to designate his IRA as non-marital property in the parties' prenuptial agreement. In addition, the court believed it would be inequitable to construe the prenuptial agreement so as to permit Husband to exclude a portion of his IRA as non-marital property given that he failed to list the account within the agreement. We address the master's and the trial court's determinations in turn.

We are unable to agree with the master's determination that Husband's IRA account at MSSB is held in a joint account under the names of Husband and Wife. Our review of the brokerage documents reveals that

the MSSB consolidated summary form included in the record refers to three separate accounts titled in different names. In particular, the consolidated form reflects a personal account titled to "Husband and Wife as joint tenants." The form also shows two IRA accounts, one titled to Husband, individually, and the other titled to Wife, individually. Not only do the three accounts bear different titles, each account bears a distinct account number. The account referenced in the master's report at paragraph 18 corresponds to an IRA account valued at approximately $130,004.00 and held in Husband's name only. Under these circumstances, we cannot agree with the master's conclusion that Husband's IRA is held in a joint account.

We turn now to the trial court's disposition of Husband's claim. Again, we find error. The trial court concluded that the entirety of Husband's IRA had to be classified as marital property in view of Husband's failure to list the account as non-marital property within the parties' prenuptial agreement. Paragraph 5.01 of the prenuptial agreement provides, however, that all property which is not defined as non-marital property under paragraph 14.01 **and** which is acquired during the marriage shall be considered marital property. The plain terms of paragraph 5.01 impose a two-part requirement for mandatory classification of an asset as marital property: 1) failure to identify the property or asset pursuant to the prenuptial agreement, and 2) acquisition after the marriage. Husband failed to identify a portion of his IRA as non-marital property; however, it is

undisputed that he possessed a portion of his IRA account prior to the marriage. Thus, the premarital portion of Husband's IRA was not subject to equitable distribution.

Having concluded that the master and the trial court erred in concluding that the entirety of Husband's IRA was subject to equitable distribution, it would seem to follow that we should order the relief requested by Husband. We decline this invitation, however. In his report, the master states that Husband's IRA account with Dean Witter Reynolds was "transferred together with funds from other **joint** accounts" to MSSB. Master's Report and Recommendation, 4/3/13, at 6 ¶ 18 (emphasis added). After careful review of the testimony of the parties, the arguments of counsel, the appellate submissions of the litigants, the master's report, and the trial court's opinion, we are unable to definitively exclude the possibility that, during the transfer process referred to by the master, Husband's premarital IRA account merged into an account held jointly by Husband and Wife. A transfer to a jointly held account would constitute a gift of separate property to the marital estate under paragraph 6.03 of the prenuptial agreement. The trial court should inquire into this possibility during proceedings on remand. If the premarital portion of Husband's IRA was never held in a joint account, then those funds should not be subject to equitable distribution. If the premarital portion of Husband's IRA was held in a joint account, then the funds should be treated as a gift to the marital

estate. For these reasons, we vacate the equitable distribution award entered by the trial court and remand for further proceedings consistent with this memorandum.

July 8, 2013 order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2014