J-A08002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SUSAN T. DEAVER, A/K/A SUSAN TAYLOR LEMON, A/K/A SUSAN TAYLOR DEAVER-LEMON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARCUS J. LEMON, | |
| Appellant | No. 1244 MDA 2014 |

Appeal from the Decree Entered July 15, 2014
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-10-08775

BEFORE:  SHOGAN, WECHT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 01, 2015**

Marcus J. Lemon ("Husband") appeals from the final decree entered on July 15, 2014, in this divorce action.   After careful review, we reverse and remand with instructions.

The relevant facts of this case were set forth by the trial court as follows:

> The parties were married August 30, 1996 in Lancaster County, Pennsylvania. Susan T. Deaver ("Wife") is now 44 years old residing at 121 Windover Turn, Lancaster, PA. Marcus J. Lemon ("Husband") is 43 years old residing at 2700 Virginia Avenue NW, Washington, DC. There were two (2) children born of this marriage[.]

---

[*]  Retired Senior Judge assigned to the Superior Court.

Wife filed a complaint of divorce under Section 330[1](c) on July 27, 2010. Husband filed an affidavit of consent on December 22, 2010. There are no defense[s] and no counter-claims. Penn Glazier, Esq. was appointed Divorce Master on July 18, 2011. Hearings were held December 7, 2011 and March 23, 2012. Briefs were filed on February 15, 2013 and the Divorce Master's report was filed on May 30, 2013. Husband filed exceptions on June 17, 2013. Wife did not file exceptions.

The Divorce Master recommended that a divorce be granted as both parties consent and the marriage is irretrievably broken. Pursuant to section 3701[(a)] of the divorce code, the Divorce Master also recommend[ed] alimony be paid to [W]ife in the amount of $2,000 per month for a period of 8 years. As justification for this recommendation, the Divorce Master found that Wife is a stay-at-home mother of two (2) children, a part-time artist and works part-time for the Manheim Township School District. Nevertheless, she was assessed an earning capacity, by this Court of $30,000 per year. On the other hand, Husband is employed with McKenna, Long & Aldridge, a law firm in Washington, DC, and his income is approximately $230,000 per year. Currently, Wife receives $3,200 per month in spousal and child support. The parties were married for 14 years. Prior to the children being born, Wife worked full-time and provided health insurance for the parties. Although Husband completed law school before the parties married, marital funds were used to pay down his school loan debt. The most significant findings made by the Divorce Master were in regards to Husband's misconduct. During the marriage, Husband had several relationships. While buying a new home for his family in Lancaster, Husband had purchased a BMW, co-signed for an apartment for his paramour in Washington, DC, bought a dog with him and furnished the apartment with new furniture and a plasma TV. In addition, Husband spent over $10,000 in additional gifts not including trips and dinners. The Divorce Master noted that marital misconduct is only one factor to consider; however, he felt the misconduct was so egregious that i[t] warranted significant weight.

The Divorce Master also found that, although the parties enjoyed an upper middle class living, they possess very little in the way of marital assets, and concluded that the total value of the marital estate of $14,160.58 should be apportioned as follows:

| Item | Value | To Wife | To Husband |
|---|---|---|---|
| Marital Residence [] | | | |
| Appraised value: | $626,000 | | |
| Less: | | | |
| Cost of sale (7%): | -$43,820 | | |
| Balance of Mortgages: | $629,276.66 | | $0 |
| | | | |
| Contents of Marital Residence | Amicably Divided | | |
| | | | |
| Rent Received by Husband for Lease of jointly owned residence | $0 | | $0 |
| | | | |
| Husband's 401(k)[] | $9,460.58 | $9,460.58 | |
| | | | |
| Western Reserve Life Insurance Policy cashed in by Husband | $4,700.00 | | $4,700.00 |
| | $14,160.58 | $9,460.58 | $4,700.00 |

Given these meager assets, the Divorce Master concluded that Wife clearly does not possess sufficient property to provide for her reasonable needs. This fact, coupled with the equally correct observation that Wife is unable to support herself in anything remotely resembling the manner in which both Husband and Wife had become accustomed to during the marriage, leading him to the conclusion that Alimony was justified in this case in the amount of $2,000 per month for a period of eight (8) years.

The Divorce Master also recommended that Husband pay all of Wife's counsel fees totaling, $28,368.00 due to the disparity in their incomes; however, he also pointed to the vexatious manner in which [H]usband has prosecuted this divorce as justification for such an award. In addition, the Divorce Master recommended that Husband be ordered to obtain and maintain a life insurance policy in the amount of $100,000, naming [W]ife and children as beneficiaries, and that such policy shall remain in effect until his youngest child is eighteen (18) years of age. The Divorce Master recommended that Husband be required to maintain health [i]nsurance for Wife through COBRA for a period of not less than three (3) years.

Finally, what appears to be the crux of the issues is Wife's Trust Fund which the Divorce Master found to be non-marital property, as it was established as a "verbal trust" more than 40 years ago which was later memorialized in a written document.

The Divorce Master also noted that all contributions came solely from Wife's parents or inheritance from Wife's grandparents, that neither Husband nor Wife ever withdrew funds from the account(s), and that Wife has no access to the trust and no ability to withdraw income or principal. The value of the trust, at the date of Argument Court, was approximately $516,000.

* * *

The trial court carefully considered the Exceptions raised by Husband, as well as the factors set forth in 23 Pa. C.S.A. §3502, and determined that economic justice was achievable in this case by making a few minor modifications to the recommendations of the Divorce Master. With regard to Husband's Exceptions 1 & 2, the trial court concluded that the Master erred in finding that Husband, at the date of separation, was the owner of a life insurance policy with a cash value. Based upon the arguments of counsel presented in their respective briefs and in Argument Court, the trial court concluded that Husband's Life Insurance Policy was cashed out prior to separation and used to pay off marital debt. As such, it had no value for purposes of equitable distribution. Moreover, Wife's Life Insurance Policy, which the trial court concluded was marital property, had a cash value of $5,223.00 at the time of the Master's Hearing.

Further, the trial court was persuaded that the Divorce Master correctly concluded that Wife's Trust Fund was non-marital in nature and that she has no present ability to control or derive income from the asset. Consequently, given the meager marital assets in this case, the Divorce Master's recommendation, that Husband pay Alimony in the amount of $2,000 per month to Wife for a period of eight (8) years, was equally justified. Wife clearly does not possess sufficient property to provide for her reasonable needs, and, given her current earning capacity assessed by this Court, she is unable to support herself in anything remotely resembling the manner in which both Husband and Wife had become accustomed to during the marriage.

The trial court is equally persuaded that circumstances dictate that Husband be required to maintain a $100,000 life insurance policy naming Wife and children as beneficiaries, and that such policy shall remain in effect until his youngest child is eighteen (18) years of age. However, this Court also established,

in an ancillary proceeding, that Wife has an earning capacity of $30,000.00 per year, and, currently, she is under employed by choice. Consequently, this Court concluded that she is capable of obtaining and maintaining health insurance for herself, and, therefore, the trial court did not require Husband to maintain COBRA benefits for her at his expense despite the recommendation of the Divorce Master.

Based upon these findings and conclusions, and given the fact that Husband has substantial student debt, is shouldering the majority of the marital debt all while being obligated to pay Alimony and Child Support, the trial court determined the total value of the marital estate to be $14,683.58, and that it should be apportioned as follows:

| Item | Value | To Wife | To Husband |
|---|---|---|---|
| Marital Residence [] | | | |
| Appraised value: | $626,000 | | |
| Less: | | | |
| Cost of sale (7%): | -$43,820 | | |
| Balance of Mortgages: | $629,276.66 | | $0 |
| | | | |
| Contents of Marital Residence | Amicably Divided | | |
| | | | |
| Rent Received by Husband for Lease of jointly owned residence | $0 | | $0 |
| | | | |
| Husband's 401(k)[] | $9,460.58 | | $9,460.58 |
| | | | |
| Western Reserve Life Insurance Policy owned by Wife | $5,223.00 | $5,223.00 | |
| | $14,683.58 | $5,223.00 | $9,460.58 |

Finally, for the reasons stated in the Master's Report, the Court affirmed the Master's recommendation that Husband assume full responsibility for Wife's attorney fees and costs incurred during this divorce proceeding.

Trial Court Opinion, 9/18/14, at 3-8. A final divorce decree was entered on July 15, 2014, and on July 23, 2014, Husband filed a timely appeal.

On appeal, Husband raises the following issues for this Court's consideration:

A. Whether the Court below erred in finding that the accounts in the individual name of [Wife], in Trust for her mother and accounts in the joint names of [Wife] and her mother were held in an oral trust to which [Wife] had no ability to control and receive either principal or income?

B. Whether the Court below erred in finding that [Wife], as settlor, could create the Susan Deaver-Lemon Family Trust without being in possession and control of the funds she contributed to it?

C. Whether the Court below erred in finding that [Wife] had no separate property from which income and gain was received during marriage, which income and gain constituted marital property?

D. Whether the Court below erred in ordering [Husband] to pay alimony to [Wife]?

E. Whether the Court below erred in Ordering [Husband] to pay attorneys['] fees to [Wife]?

F. Whether the Court below erred in Ordering Appellant to obtain and maintain a life insurance policy on his life in the face amount of $100,000 naming [Wife] and their children as beneficiaries?

Husband's Brief at 7.

As noted by the trial court, the crux of this appeal is its determination that Wife established an oral trust and that her trust funds were entirely non-marital property. Because Husband's first three issues assail the status of the trust funds as non-marital property and income source, we shall address those issues concurrently.

"When reviewing an order of equitable distribution, our standard of review is limited, and we will not disturb the trial court's decision absent an abuse of discretion or error of law which is demonstrated by clear and

- 6 -

convincing evidence." ***Gilliland v. Gilliland***, 751 A.2d 1169, 1171 (Pa. Super. 2000) (citation omitted). "The determination of whether an asset is part of the marital estate is a matter within the sound discretion of the trial court." ***Id***. (citation omitted). Additionally, "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." ***Childress v. Bogosian***, 12 A.3d 448, 455 (Pa. Super. 2011) (citation omitted). We also note that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." ***Id***. at 455-456 (citation omitted).

The overarching issue in this matter is Husband's claim that Wife failed to establish an "oral trust" over which she had no control, and he claims that Wife had access to the trust funds. Husband's Brief at 19. Pursuant to 20 Pa.C.S. § 7737, oral trusts created after November 6, 2006, are unenforceable in this Commonwealth. However, prior to the effective date of section 7737, oral trusts, also termed parol trusts, were permitted in Pennsylvania. ***In re Trbovich's Estate***, 413 A.2d 379, 380 (Pa. 1980) (citation omitted). In order to establish a parol *inter vivos* trust of personalty, the proponent of such a trust has the burden to establish its existence. ***Id***. (citation omitted). The acts and words of those involved in

creating the trust must admit to no other interpretation than the creation of a trust, and the proof must be clear, precise, and unambiguous. *Id*. (citations omitted). No part of a parol trust can be left to inference, and the proof must be clear and specific in all particulars. *Id*. (citation omitted).

Contrary to Husband's argument, Wife has maintained that while a written trust document was created in May 2010, the trust itself was established forty years earlier, before the effective date of section 7737. Wife's Brief at 6. The trial court accepted the Master's recommendation and concluded that the testimony from Wife and Wife's father was credible concerning the creation of the oral trust. Wife has maintained she had no access to the funds in the oral trust, and thus it was never her property. Trial Court Opinion, 9/18/14, at 10-11. After careful review, we are constrained to disagree.

The record reveals that prior to the marriage, Wife received an inheritance following the death of her paternal grandmother, and those funds, combined with gifts from Wife's parents, totaled approximately $140,000.00. N.T., 2/24/12, at 111-115. During the marriage, Wife received another inheritance in the amount of $125,000.00 following the death of her maternal grandmother. *Id*. at 115. Wife claims that these funds were held in the oral trust which was later converted to a written trust that was memorialized on May 5, 2010. However, Husband claims that the May 5, 2010 written trust is, in fact, evidence that Wife had access to and

control over the oral trust funds. This control and access to the trust funds defeats the trial court's finding of an oral trust over which Wife had no control. Husband's Brief at 20-21. Husbands points out:

> By its express terms, Wife placed her property into the trust. Evidence of deposits into the trust further verify that Wife deposited her money into the trust. Therefore, the Susan Deaver-Lemon Trust, by its express terms and coupled with the evidence of the deposits into the trust, are further proof that the funds in the Fulton Bank account, Vanguard Group funds and Fidelity Investments were the funds of Wife and no oral trust ever existed. Clearly, if the funds in question had been held for the benefit of Wife and, as the Master and the Court below determined, she had no ability to obtain or control principal or income, she could not have contributed the very same money, as settlor, to her trust.

Husband's Brief at 23.

We agree with Husband. The language from the written trust lists Wife as the settlor. Susan Deaver-Lemon Family Trust, 5/5/10, at ¶ 1. The written trust document reveals that Wife as settlor also funded the trust and made herself beneficiary. *Id*. Clearly, if Wife was able to fund the written trust with monies from the alleged oral trust, it is axiomatic that she had access and control over those funds. Therefore, we conclude that the trial court erred and abused its discretion in concluding that an oral trust existed. The corpus of the alleged oral trust, which is now the corpus of the Susan Deaver-Lemon Family Trust, is the separate property of Wife.

Having concluded that the trust was Wife's separate property, we now address Husband's claim concerning the income received from those funds. During the time the parties were married, the trust funds earned interest

and dividend income and increased in value to approximately $400,000 at the time the parties separated. N.T., 2/12/14, at 120. Husband argues that while the money that Wife inherited constitutes Wife's separate property and a non-marital asset, the interest earned on those funds during the marriage was a marital asset. Husband's Brief at 18. We agree with Husband. Because income was earned on Wife's property during the marriage, that income should have been deemed marital property and subject to equitable distribution. 23 Pa.C.S. § 3501(a).

In Husband's remaining issues, he challenges the order directing him to pay alimony, pay Wife's attorney's fees, and maintain life insurance listing Wife and the parties' children as beneficiaries. The trial court's order in regard to those issues was prefaced on its finding that an oral trust existed and that Wife had no control over those funds. As discussed above, we have determined that the trial court erred in that conclusion; therefore, because Wife had access to those funds and the increase in value of those funds should have been deemed marital property, the basis for the alimony award, payment of attorney's fees, and maintenance of life insurance has changed substantially.

For these reasons, we are constrained to conclude that the trial court's findings were not supported by the evidence, and therefore, we reverse the trial court's determination that an oral trust existed. Because the existence of the oral trust was the basis for the balance of the trial court's order

concerning equitable distribution, alimony, attorney's fees, and life insurance, we remand those determinations to the trial court for further consideration in light of our decision. On remand, the trial court shall determine what income the trust funds accrued during the marriage, and consider that income as marital property. The court shall then determine the amounts due as equitable distribution, and the necessity of alimony, attorney's fees, and life insurance.

Decree reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/2015