J-A14030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AL-KAREEM Q. LOGAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KIMBERLY L. THOMPSON | : | No. 2078 EDA 2022 |

Appeal from the Order Entered July 20, 2022
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No: D16108527

BEFORE: LAZARUS, P.J., STABILE, J., and LANE, J.

MEMORANDUM BY STABILE, J.:    **FILED DECEMBER 17, 2024**

In this divorce proceeding, Appellant, Al-Kareem Q. Logan ("Husband"), appeals from an order awarding Appellee, Kimberly L. Thompson ("Wife"), $229,203.50 for marital assets and debts and awarding Wife's attorney $50,000.00 in legal fees. We affirm.

The record reflects that on September 19, 2015, after a period of living as husband and wife under the traditions of their Islamic faith, the parties were legally married in Philadelphia. Both parties brought real estate into the marriage, and at the time of marriage they had formed businesses together: AOK Real estate, a property holding company, and Monte Cristo Real Estate, a property management company.

On February 13, 2016, the parties entered into a postnuptial agreement.[1]  On the same date, they signed an addendum to this agreement concerning shared debt.  The postnuptial agreement, drafted by Husband and his counsel, provided that all property not listed as separate property would be treated as shared, and that in the event of separation, each party would receive half of each property's net equity regardless of the proportion of his or her investment, unless otherwise agreed in writing.  The addendum provided that, upon liquidation of the assets held by AOK Real Estate, Husband would pay all remaining personal debts incurred by the business, which were enumerated in Schedule A of the addendum.

On October 26, 2016, the parties separated, and Husband filed a complaint in divorce with a count for equitable distribution of property.

On January 31, 2018, the parties entered into a second postnuptial agreement, drafted by Husband's attorneys.  On March 19, 2018, this agreement was entered as a court order by the Honorable Holly Ford. Paragraph D of this agreement reiterated that personal debt associated with the parties' real estate would be paid in accordance with the February 2016 postnuptial agreement.

Pursuant to this agreement, in 2018, all AOK Real Estate properties were

---

[1] Somewhat confusingly, this agreement was titled as a "prenuptial" agreement.  Since the parties entered into this agreement after getting married, we will refer to it as their first postnuptial agreement.

- 2 -

sold, and proceeds totaling $259,519.98 were placed in separate Section 1031 exchange accounts for each party. Husband's 1031 account contained $131,270.67, and Wife's account contained $128,249.31. Pursuant to the terms of the 2018 postnuptial agreement, neither party was permitted to withdraw their 1031 account funds without the agreement of both parties or by court order. Despite this agreement, Husband withdrew the funds from his 1031 account without an agreement or court order. Husband did not inform Wife or either party's attorney of the withdrawal.

During a hearing on November 30, 2018, a divorce hearing officer bifurcated the parties' divorce proceedings. The hearing officer granted a divorce decree but did not decide issues regarding property distribution, economic relief, or the parties' postnuptial agreements, holding that all issues relating to the agreements would be addressed in motion court proceedings before a judge. On December 19, 2018, the divorce decree was entered.

On September 27, 2018, Wife filed a contempt petition. On January 7, 2019, the Honorable Diane Thompson found Husband in contempt for willfully and knowingly violating the 1031 account agreement by withdrawing funds without an agreement or court order. Judge Thompson ordered Husband to provide an accounting of any missing funds after depositing the funds remaining from his withdrawal into an escrow account with each party's counsel acting as agent. Husband did not appeal Judge Thompson's order.

On February 21, 2019, Wife filed a second petition for contempt. On May 23, 2019, a hearing on the second contempt petition took place before

the Honorable Ourania Papademetriou. At the time of that hearing, Husband had neither opened an escrow account nor deposited any funds. While Husband provided an accounting of the money withdrawn that was in violation of the March 19, 2018 order, he did not comply with any other provisions of Judge Thompson's January 7, 2019 order. Judge Papademetriou found Husband in contempt of the January 7, 2019 order. On May 29, 2019, Judge Papademetriou ordered Husband to deposit all money he received from the 1031 exchange account into an escrow account, with both parties' attorneys acting as agents. Nevertheless, Husband did not create an escrow account or deposit funds into any such account. Wife did not withdraw her 1031 exchange account funds until permitted to do so by an order dated January 28, 2021.

On July 3, 2019, the Honorable Doris Pechkurow held that the two postnuptial agreements addressed the disposition of all marital assets and economic interests, and that a judge would resolve the parties' disputes concerning these agreements and related matters in a *de novo* trial.

On December 18, 2019, a *de novo* trial began before the Honorable Christopher Mallios. Also, before Judge Mallios was Wife's third contempt petition filed on November 22, 2019 and cross-petitions for special relief filed by the parties. The ensuing hearings were lengthy and highly adversarial. While Husband was testifying, two of his attorneys in two separate hearings requested permission to withdraw their appearances. Husband gave inconsistent testimony during these hearings. For example, Husband provided

hundreds of pages of documents including illegible receipts and duplicative documents in anticipation of the initial hearing on December 18, 2019. During cross-examination about these documents on September 10, 2020, however, Husband testified, "Oh, no, none of that is admissible, Your Honor. That book in particular, you can throw away." N.T. 9/10/20, at 26-27.

On July 20, 2022, Judge Mallios entered an order resolving all economic claims between the parties, the parties' petitions for special relief and Wife's third contempt petition. Judge Mallios ordered Husband to pay Wife $229,203.50 for marital assets and debts. Judge Mallios reached this amount by finding that Husband owed Wife $233,236.10 less $4,032.60 that Wife owed Husband. Judge Mallios also ordered Husband to pay Wife's attorney $50,000.00 in counsel fees. Husband timely appealed to this Court.[2] One day after filing his appeal, Husband filed a Pa.R.A.P. 1925 statement of matters complained of on appeal ("Rule 1925 statement"). On November 14, 2022, the trial court filed a Pa.R.A.P. 1925 opinion. In early 2023, Husband filed for bankruptcy. In November 2023, the bankruptcy stay was lifted, thus allowing this appeal to proceed.

Husband raises the following issues in this appeal:

1. Whether the trial court overrode or misapplied the law by arriving at determinations as to monetary amounts [Husband] was ordered to pay [Wife], as reflected in the trial court order,

---

[2] Husband properly refrained from filing post-trial motions, because the Rules of Civil Procedure prohibit post-trial motions relating to claims involving marital property or enforcement of marital agreements. Pa.R.Civ.P. 1920.52(a).

which amounts derived from certain credit accounts, monies or (personal) property not specified in the parties' postnuptial Agreements.

2. Whether the trial court ignored or failed to apply the relevant law or abused its judicial discretion by mandating [Husband] to pay [Wife's] counsel fees and costs reflecting partiality, prejudice, bias, or ill will.

3. Whether the trial court overrode the relevant law or abused its discretion by granting [Husband's] counsel's petition to withdraw as counsel, while [Husband] was on cross examination and within twenty (20) days of the next hearing date.

4. As a subsidiary issue pursuant to Pa.R.A.P. 1925(b)(4)(v), [Husband] offers the following: whether the trial judge abused his discretion by engaging in settlement discussions with counsel only, absent [Husband]'s knowledge or input, after [Husband] had testified on direct testimony, and at that precise point in the proceedings, was on cross examination.

Husband's Brief at 20-21.

We review awards of equitable distribution for abuse of discretion:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Childress v. Bogosian*, 12 A.3d 448, 455 (Pa. Super. 2011) (citations omitted). The court will not engage in a factor by factor review of the trial's rulings but instead looks at the distribution scheme as a whole. *Lee v. Lee*, 978 A.2d 380, 383 (Pa. Super. 2009). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility, and we will not reverse these determinations so long as they are supported by the evidence. *Childress*, 12 A.3d at 455.

Judge Mallios asserted in his opinion that Husband waived all of his claims on appeal because his Rule 1925 statement was vague and overly lengthy. Opinion, 11/14/22, at 13-14. We held in *Kanter v. Epstein*, 866 A.2d 394 (Pa. Super. 2004), that an appellant fails to preserve his issues for appeal when he raises an "outrageous" number of issues in his Rule 1925 statement. *Id.* at 401 (two appellants failed to preserve any claims for appeal when they raised 55 and 49 issues, respectively, in their Rule 1925 statements). In contrast, Husband's Rule 1925 statement has far fewer issues (11), and they are neither too vague nor too lengthy to hamper appellate review. Accordingly, we decline to find waiver on the basis asserted by Judge Mallios. We do, however, find that Husband waived multiple arguments for other reasons discussed below.

In his first argument, Husband asserts that Judge Mallios erred by awarding Wife monies in paragraphs 3, 4, 5, 6, 7, 10, 11, 12, 13 and 14 of the July 20, 2022 order, because the postnuptial agreements did not authorize these awards. Husband's Brief at 28, 31-34. Wife responds that Husband has

waived these objections due to his failure to allege in his Rule 1925 statement that the postnuptial agreements did not authorize these awards. We conclude that Husband has waived all objections except his objection to paragraph 10. We further conclude that Husband's objection to paragraph 10 (which directs Husband to pay Wife $88,829.39 to reimburse her for debts) lacks merit.

Judge Mallios awarded Wife the following in the relevant paragraphs of his order:

```
Paragraph 3 —   $8,072.94 (AOK real estate Univest account)
Paragraph 4 —   $12,625.41 (AOK real estate PFCU account)
Paragraph 5 —   $20,950.00 (personal property retained by Husband)
Paragraph 6 —   $35,704.00 (rental income)
Paragraph 7 —   $18,200.28 (retained security deposits)
Paragraph 10 — $88,829.39 (loan and credit card payments)
Paragraph 11 — $25,176.50 payments for life insurance policy)
Paragraph 12 — $9,022.40 (medical bills)
Paragraph 13 — $2,000.00 (move out contract)
Paragraph 14 — $450.00 (Santander overdraft fees)
```

Order, 7/20/22.

Paragraph 2 of Husband's Rule 1925 statement objects to paragraph 3 of the July 20, 2022 order as follows:

The Court erred by ordering [Husband] to pay [Wife] $8,072.94. The Monte Cristo Bank Account did not have a balance of $16,056.97 on the date of separation of October 26, 2016. AOK Real Estate had no money.

Rule 1925 Statement at ¶ 2. This is a claim that Judge Mallios miscalculated the balance in the parties' bank account. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies in the bank account, Husband's Brief at 30-34, a different issue than

the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) (any issue not raised in Rule 1925 statement will be deemed waived for appellate review).

Paragraph 3 of Husband's Rule 1925 statement objects to paragraph 4 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $12,625.41.
> The $20,821.14 came from a loan [Husband] took.

***Id.*** at ¶ 3. Wife contends that Husband waived this claim because the argument in his brief (the postnuptial agreements did not authorize an award of these monies) differs from the objection in his Rule 1925 statement. Judge Mallios found waiver for a different reason:

> Husband does not specify what $20,821.14 is referenced, points to no evidence in the record that would support his claim that those funds were from a loan, and fails to elucidate why the fact that the funds may have been from a loan means that this Court erred in its decision . . . This statement of error therefore is vague to the point of leaving the court guessing as to what error of law or fact is alleged, therefore fails to meet the requirements of Pa.R.A.P. 1925(b), and should provide no basis for relief.

Opinion, 11/14/22, at 18-19. We agree with Judge Mallios that Husband's objection to the award of $20,821.14 is waived due to the vagueness of his objection in his Rule 1925 statement. ***See Commonwealth v. Lemon***, 804 A.2d 34, 37 (Pa. Super. 2002) ("when the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review . . . [A]

Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all").

Paragraph 4 of Husband's Rule 1925 statement objects to paragraph 5 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $20,950.00. The parties did not have $41,900.00 value of personal property. Wife had no jewelry with a fair market value above $1,000.00. Wife had no proof. Husband produced receipts for jewelry totaling $3,000.00. There is no basis to support a value of $10,000.00 worth of tools.

*Id.* at ¶ 4. This is a claim that Judge Mallios made an improper valuation of the parties' personal property. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to personal property, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

Paragraph 5 of Husband's Rule 1925 statement objects to paragraph 6 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $35,704.00 for rental income. When the mortgages, rental repairs utility bills, property insurance) and renovation cost were subtracted from rental income there was a net loss. AOK Real Estate lost money as shown on all tax returns. The Court took all income from 2017 tax return for AOK Real Estate and did not consider expenses. The months in 2016 that are subsequent to the date of separation and the total estimate that the Court stated was incorrect.

*Id.* at ¶ 5. This is a claim that Judge Mallios erroneously determined that the parties' business earned rental income. In his appellate brief, however,

Husband argues that the postnuptial agreements did not authorize an award of monies relating to rental income, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

Paragraph 6 of Husband's Rule 1925 statement objects to paragraph 7 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $18,200.28 for what it stated was retained security deposits. [Husband] renovated all five properties. Both parties were behind in paying taxes as of the date of separation. In fact, the Nassau Road property was going up for Sheriffs Sale as of the date of separation. The Court erred by absolving [Wife] of all financial responsibility for delinquent taxes, refuse fees and past due water bills. The Court rewarded [Wife] for walking away from the properties and refusing to sell for two years causing all taxes utilities to increase.

*Id.* at ¶ 6. This is a claim that Judge Mallios erroneously awarded Wife security deposits even though she failed to pay taxes and other bills and refused to sell the properties. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to security deposits, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

Husband contends that Judge Mallios erred in paragraph 11 of his order by ruling that Husband must pay Wife $25,176.50 for payments Wife allegedly made toward a life insurance policy. Wife responds that Husband waived this issue by failing to raise this issue in his Rule 1925 statement. Wife's Brief at

14. Our review of the Rule 1925 statement reveals that Wife is correct. Therefore, this issue is waived. ***Lord, supra***.

Paragraph 8 of Husband's Rule 1925 statement objects to paragraph 12 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $9,022.40 for medical bills. [Husband] provided documentation from his employer, the Philadelphia Gas Works, that stated it could not determine the reason [Wife] was removed from coverage as of October 1, 2016. There was no evidence that [Husband] removed [Wife] from coverage. It is standard procedure to notify an insured of a lapse in coverage.

***Id.*** at ¶ 8. This is a claim that the court erred by awarding Wife monies for medical bills because there was no evidence Wife was removed from medical insurance coverage. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to medical bills, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. ***Lord, supra***.

Paragraph 9 of the Rule 1925 statement objects to paragraph 13 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $2,000.00. Appellant never signed a move-out contract. [Wife] produced a fictitious document that was never signed by [Husband]. [Wife] never produced a verification page for what she claimed [Husband] docu-signed.

***Id.*** at ¶ 9. This is a claim that the parties did not have a move-out contract.

In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to move-out payments, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

Paragraph 10 of the Rule 1925 statement objects to paragraph 14 of the order as follows:

> The Court erred by ordering [Husband] to pay [Wife] $947.60. There was never a $947.60 overdraft fee. [Wife] had an auto deduction on her checking account. [Wife] should have been responsible for the entire amount.

*Id.* at ¶ 10. This is a claim that the court erred in directing Husband to pay Wife an overdraft fee because there was no such overdraft fee. In his appellate brief, however, Husband argues that the postnuptial agreements did not authorize an award of monies relating to an overdraft fee, Husband's Brief at 30-34, a different issue than the issue in the Rule 1925 statement. Since Husband did not raise this issue in his Rule 1925 statement, it is waived. *Lord, supra*.

For these reasons, Husband waived his objections to paragraphs 3, 4, 5, 6, 7, 11, 12, 13 and 14 because his Rule 1925 statement raised different objections to these paragraphs than the objection in his brief. *Lord*, *supra*. Even if Husband had preserved these arguments for appeal, we still would have found them meritless in view of the comprehensive analysis in Judge Mallios's opinion. *See* Opinion at 17-31, 34-39 (objection to paragraph 3

- 13 -

meritless because evidence showed that parties' bank accounts had over $16,000.00, half of which belonged to Wife; objection to paragraph 4 meritless because there was no evidence that these monies came from Husband's loan; objection to paragraph 5 meritless because evidence showed that value of parties' personal property was $41,900.00, half of which belonged to Wife; objection to paragraph 6 meritless because parties had rental income of $71,408.00, half of which belonged to Wife; objection to paragraph 7 meritless because Husband retained security deposits, excluded Wife from rental business, and failed himself to pay taxes on the properties; objection to paragraph 12 meritless because evidence showed that Husband removed Wife from his employer's medical insurance coverage without informing Wife; objection to paragraph 13 meritless because evidence showed that parties had a move-out contract; objection to paragraph 14 meritless because Husband, not Wife, incurred overdraft fee).[3]

Next, we hold that Husband preserved his objection to paragraph 10 of Judge Mallios's order. His Rule 1925 statement provides in relevant part:

> The Court erred by ordering [Husband] to pay [Wife] $88,829.39 to reimburse her for debts. The Prenuptial Agreement states that Appellant is to reimburse Appellee for business debts. The Court simply added up payments [Wife] made in her bank statements without any reference to whether they applied to the terms of the Prenuptial Agreement as to debt owed for business use. [Wife] provided no documentation to confirm the amount owed as of the

---

[3] As discussed above, Judge Mallios did not address paragraph 11 of his order, an award of payments Wife made toward a life insurance policy, because Husband did not raise an objection to this award in his Rule 1925 statement.

date of separation. [Wife] only provided information as to the total amount she paid. It cannot be determined whether or not [Wife] was making purchases post separation.

Rule 1925 Statement at ¶ 7. Because the "prenuptial agreement" actually was the parties' first postnuptial agreement, *see* n.1, *supra*, we conclude that this objection is congruent with the argument on pages 30-34 of Husband's brief that Judge Mallios misconstrued or misapplied the postnuptial agreements with respect to business debts.

We further conclude, however, that this argument lacks merit. Judge Mallios analyzed this issue as follows:

> Husband argues this Court erred in ordering Husband to pay Wife $88,829.39 to reimburse her for loan and credit card payments she made after the date of separation. Husband's argument relies on the parties' 2016 postnuptial agreement which states that Husband is required to reimburse Wife for business expenses, but that this Court instead "simply added up payments" and did not distinguish between business and personal debt. Husband claims there was insufficient documentation to establish what was owed at the time of separation and that "it cannot be determined whether or not Wife was making purchases post separation."
>
> The irony is not lost on this Court that Husband alleges error based on this Court somehow improperly conflating business and personal expenses, when after days of cross-examination and shifting false testimony it came to light that Husband had done the same and asked this Court not to examine any of that evidence. However, this Court was well within its discretion in ordering Husband to reimburse Wife for debts she paid but that Husband was responsible for under the parties' 2016 and 2018 postnuptial agreements.
>
> Husband concedes in his allegation of errors that under the 2016 postnuptial agreement, he must reimburse Wife for shared debts.

(Husband's [Rule 1925] Statement, at [¶ 7][4]; Ex. P-1). Nothing in the 2018 postnuptial [agreement] alters that responsibility, instead reiterating that personal debt associated with the properties must be paid in accordance with the 2016 agreement. (Ex. P-2, at ¶ D). Schedule A of the 2016 agreement lists as shared debt many different credit cards and loans. (Ex. P-1, Schedule A).

Evidence and testimony at trial showed that Wife paid all debts listed in Schedule A at great personal expense and that ultimately, she paid the remaining shared debts only when she was able to liquidate her 1031 Exchange Account by an order of this Court. (N.T. 06/23/21, at 56, 62-71; Ex. 27, 31, 30, 32, 33, 34, 35, 36, 37). These expenses included $5,891.78 for a loan from Philadelphia Federal Credit Union. (Ex. 27). She paid $10,562.40 in payments to a credit card through Bank of America. (Ex. 31).

Wife paid $20,905.63 in payments for a loan through American Heritage Credit Union. (Ex. 30). Payments towards a Home Depot credit card totaled $14,622.76 (Ex. 32). A Lowe's credit card totaled $2,481.35 (Ex. 33). A Chase Bank credit card totaled $8,902.59. (Ex. 34). A Susquehanna Bank credit card totaled $11,564.91. (Ex. 35). A Discover credit card totaled $8,920.01. (Ex. 36). Lastly, a Barclay's credit card totaled $4,977.96. (Ex. 37).

Husband acknowledges that Wife did provide this information regarding the total amounts she paid for the business. (Husband's Statement, at 3). This Court found Wife's testimony and documentation in this regard to be credible, and pursuant to the parties' 2016 agreement, this Court properly ordered Husband to reimburse Wife for the entire amount, $88,829.39. No relief is due.

Opinion at 32-34. We accept this analysis, since it fell within Judge Mallios's

province to weigh the evidence and assess credibility, and since his rulings on

_____

[4] To repeat, paragraph 7 of the Rule 1925 statement is the only paragraph in which Husband referenced a postnuptial agreement.

these subjects found ample support in the evidence. *Childress*, 12 A.3d at 455.

In the second argument in his brief, Husband objects to Judge Mallios's decision to order Husband to pay $50,000.00 in attorney fees directly to Wife's counsel. Husband has waived this argument to the extent that his appellate brief raises issues that he failed to raise in his Rule 1925 statement. To the extent that Husband preserved this issue for appeal, it is devoid of merit.

Section 3702 of the Divorce Code provides that the court "may allow a spouse . . . reasonable counsel fees and expenses." 23 Pa.C.S.A. § 3702. We review awards of such fees for abuse of discretion. *Cook v. Cook*, 186 A.3d 1015, 1028 (Pa. Super. 2018). "Counsel fees are awarded in a divorce proceeding based on the facts of each case after a review of all the relevant factors; these factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution." *Id.*

The objection to counsel fees in Husband's Rule 1925 statement lacks a paragraph number and begins in mid-sentence:

> [Wife] $50,000.00 for the attorney fees of [Wife]. The fees allegedly incurred were excessive. Furthermore, the Postnuptial Agreement limited attorney fees to $3,600.00. The Court erred by finding that [Husband] showed a complete lack of candor and credibility. The Court further erred in finding that [Husband] caused most of the legal fees of [Wife]. The jointly owned five properties' values were supposed to be sold in 2016. The lack of action by [Wife] caused the marital assets to be eroded for a two year period leading up to the sale.

The Court compounded the error by stating that two attorneys sought to withdraw citing unspecified ethical reasons. The Court never received evidence as to any factual basis for a so-called ethical reason.[5]

Rule 1925 statement at p. 5. In his appellate brief, Appellant argues that Judge Mallios failed to consider his ability to pay, Wife's financial resources, the value of services rendered by Wife's counsel, and the property that Wife received in equitable distribution. Husband's Brief at 37 (citing **Cook**, **supra**). Husband, however, failed to raise these factors in his Rule 1925 statement and therefore has waived his right to object to these factors in this appeal. **Lord**, **supra**.

With regard to the issue that Husband actually raised in his Rule 1925 statement, Judge Mallios provided the following analysis:

[T]he Superior Court has held that in determining the propriety of an award of attorney's fees in a divorce proceeding, the purpose of such an award is to promote fair administration of justice. **Cook**, [186 A.3d] at 1028; 23 Pa.C.S.[A.] § 3702.

In the unlabeled section before allegation 15, Husband claims that "the Postnuptial Agreement limited attorney fees to $3,600." (Husband's Statement, at 5). Assuming *arguendo* Husband refers to the parties' January 2018 postnuptial, Section 2.2(c) of that agreement states, "Husband agrees to pay half of Wife's total attorney's fee for representation by Wendy Glazer, Esq., not to exceed $3,600.00. Plaintiff's one-time payment referred to here does not represent or serve as his acceptance or

_____

[5] We do not see any logical connection between Husband's objection to counsel fees and his objection that Judge Mallios "compounded [his] error" by stating that two attorneys sought to withdraw. Judge Mallios apparently did not see any connection either, since he did not address the withdrawal of counsel in his opinion. Since this matter was irrelevant to the issue of counsel fees, we do not find that Judge Mallios erred by failing to address it.

acknowledgement to pay any of Wife's future attorney's fees whether incurred in this or any other matter." (Ex. P-2, at 6). By its plain language, it is clear that Section 2.2 does not represent an agreement as to future attorney's fees incurred by Wife, but that Husband's one-time payment of $3,600 was made to cover half of Wife's attorney's fees up until the time of signing. What's more, the agreement contains no waiver of a claim for attorney's fees, which Husband acknowledged at trial. (N.T. 09/10/20, at 137).

After the 2018 postnuptial was signed, divorce litigation proceeded for an additional four years, Wife's attorney would have to file three petitions for contempt which were granted due to Husband's noncompliance with both the agreement and court orders, and generally, Appellant's lack of candor and truthfulness in these proceedings resulted in Wife incurring a high level of attorney's fees. As an illustrative example, Appellant sent a weblink of exhibits to Wife's attorney late at night on February 9, 2021 for a hearing the next day. (N.T. 04/29/21, at 213-215). This last-minute discovery, consisting of thousands of pages and containing many duplicate documents that had already been provided, necessitated hundreds of dollars in printing costs and many hours of the attorney's time as she had to go through and discern what was new about the exhibits and which documents had already been provided. *Id*.

This Court reviewed Wife's attorney's billing statements and found them to be credible. (Ex. W-28). As of April 1, 2021 Wife owed $58,245.57 in counsel fees and costs, and had already made payments totaling $18,300.00 in 2021. In light of multiple years that this litigation necessitated, the copying and printing costs, filing fees, transcript costs incurred, and the finding that Appellant was in contempt for a third time, this Court's award of $50,000 to Wife's attorney was not excessive. Such an amount promotes the fair administration of justice, and this Court's award should be affirmed.

Opinion, 11/14/22, at 40-42. We find this analysis, and the award of attorney

fees, a proper exercise of discretion.

In his third argument, Husband contends that Judge Mallios abused his

discretion by allowing his attorney to withdraw while he was on cross-

examination and within twenty days of the next hearing date. Husband has waived this issue. As discussed above, Husband claimed in his Rule 1925 statement that counsel "sought to withdraw" in the course of objecting to Judge Mallios's award of counsel fees. The Rule 1925 statement, however, failed to include the issue that Husband now raises, namely that (1) Judge Mallios actually allowed his attorney to withdraw, and (2) counsel withdrew while Husband was on cross-examination and within twenty days of the next hearing date. Because Husband once again attempts to raise an issue that he failed to include in his Rule 1925 statement, it is waived. **Lord**, **supra**. Even if Husband preserved this issue for appeal, he fails to demonstrate how he suffered prejudice from counsel's withdrawal, since he obtained new counsel before the next hearing.

In his final argument, Husband contends that Judge Mallios erred by engaging in settlement discussions with the parties and without Husband's knowledge. Husband has waived this argument by failing to include it in his Rule 1925 statement. **Lord**, **supra**.

For these reasons, we affirm the July 22, 2022 order. We attach Judge Mallios's November 14, 2022 opinion to this decision and direct that it be attached to any further filings in this case.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/17/2024